Our next case for argument is 24-1741, Mozito v. Apple. Ms. Addy, please proceed. Good morning, Your Honors. Thank you. This case turns on whether the prior art to Tedesco, which deals with an aid for disabled persons, is reasonably pertinent to the patent which claims selection of a temporary payment card in a mobile wallet. The Board legally erred in holding that Tedesco was reasonably pertinent to the problems faced in the 692 patent, which are more easily changing temporary payment card. First, the Board's sua sponte determined that the problem faced by the 692 patent was quote, display of time for certain payment-related activities, yet that is not what either party argued. So there was a fair bit of flexibility. I don't mean to be pejorative. There was flexibility at various stages with the Board, first with respect to the paragraph and the petition, but then with respect to the change from your patent owner response to your surreply, as to all of which I think everybody had plenty of fair notice. So I don't see you're getting much, making much progress in saying that there was some sort of procedural footfall. So can you focus on the substance of why, and I guess I take the Board to have said this, if you look at what these inventors were trying to do was to make a very user-friendly way on screens of handling this payment card process. Part of what that goal was, was the user knowing when a timeout was about to occur. And with respect to that, therefore, there is an inherent, what the Board called subproblem, that of making the notification of when the timeout is about to arrive user-friendly. And why isn't that enough? And you all agree here that even though we're doing a lot of reading of the spec, this is a fact question. I don't agree, Your Honor, that it's a fact question. The way you phrased it is a fact question, but let me try to address it a little differently. You're right, Your Honor, the determination of the problem posed by the invention, or the purpose of the invention, as step two of the analogous art test says. The problem the inventor was trying to solve. Exactly. And I think that's where, in this case, we get a little sideways, because we don't talk about the problem the inventor was trying to solve, which is set forth in the patent under the technical problem section, and it is more easily changing a temporary payment card. Instead, without explaining why the Board doesn't adopt that problem, the Board goes to the solution section, and it adopts the display of time for certain payment-related activities. And there's no explanation for how it gets to the patent owner stated problem from there, and why that's not sufficient, to the statement of a display of time, which is not really a problem at all, it's a statement. However, I think... If this is a substantial evidence question, then, among other things, we get to look at evidence that might not have been cited by the Board, right? The question of substantial evidence is on the record as a whole. In any event, the one paragraph technical problem statement includes this idea of resetting the setting of the temporary payment card when a payable time passes. And other aspects of the spec make it reasonably clear that the inventor was trying to solve a problem that included the user's knowledge of when that time passing would occur. But, Your Honor, that's where I disagree, respectively. The patent owner was trying to solve the problem of more easily exchanging temporary payment cards. How he decided to do that, there are many different ways, how he decided to do that resulted in a timer. Now the petitioner combined four different references, but it couldn't find a timer in the relevant art, so it had to go to, admittedly, non-analogous art. Can I just ask, so there's a reference not in the specific discussion of the analogous art, but I guess in the combination discussion in both their expert, Huff's declaration, I think, paragraph 123, and the petition at page 40, and the Board cites this, that says it was well known to use a, I forget the language, to use a timer, to use a timer to use a timer, something like that, and citing a video gaming patent. Does that have any bearing here? No, because they didn't use that for dealing with the analogous art, the admittedly non-analogous art reference that they relied on. Who's saying admittedly non-analogous art? Who admitted it's non-analogous art? So I think it's helpful to walk through the procedure for a minute. No, who admitted it? I don't see any admission. The petitioner only argued step two of the analogous art, I'm sorry, the analogous art. So it admitted that it's not, I'm sorry, from the same field of invention. Okay, all right. Of course they admitted that it's not the same field of invention. That's why we're under the reasonably pertinent test. By definition, it's not in the same field of endeavor. If it was in the same, if the requirement was for analogous art was that it had to be in the same field of endeavor, that prong two would go away. So I don't understand why we're talking about it. It doesn't have to be in the same field of endeavor, but step two says... But you keep trying to define the field that the relevant art as so narrowly that it's the same field of endeavor. With all due respect, Your Honor, there was no determination of what the field of endeavor was because we skipped over step one and went straight to step two. And so generally the field of endeavor is something broad like digital wallet payment systems and the patent specifically says here that the problem it was trying to solve, which is the test specifically, what is the problem the inventor was trying to solve, is that it was trying to make temporary payment cards more easy to swap out. And if your view is you can't go outside of temporary payment cards, then you are getting rid of step two because temporary payment cards, all art for temporary payment cards would be in the same field of endeavor. So we, by definition, if we're on step two, we're outside of temporary payment cards. So when we're looking at whether something is reasonably pertinent or not, we have to be looking at a broader problem. Your Honor, I don't disagree with you, but at the same time, if you go so broad as Apple's statement of the problem, visual tech... These are both about interfaces, right? The patent is an interface for using payment cards on, I'm assuming it doesn't have to be cell phones, but that's the best example. So that's the field of invention. The analogous art is an interface for disabled children to use cell phones with a timer. Why are those two interface things not reasonably pertinent to each other? At least enough to support a substantial evidence standard. Because one of skill in the art... Let me take a step back. You think that if there's interface art out there, that one of skill in the art would confine themselves to financial technology and not look at interface technology for video games, for other kinds of things, even though they're on the same devices? I think the difference here is in how you define the problem. And let me say the board failed to consider Mozito's argument that Tedesco was not reasonably pertinent because of the definition of the problem, and it said the patent owner failed to address the second prong. And yet, Mozito did address the second prong in four pages in its SIR reply brief, and it was directly responsive to the first time that Apple had presented the analogous art argument in its reply brief after the decision to institute invited Apple to do so. And so, I want to go back to there's a legal error here because the board failed to consider Mozito's argument, the board relied on its own statement, and we disagree that it's the same statement. But at any event, if you think that that's an appropriate statement. Let's just assume we disagree with you about the legal argument error. Why is there a lack of substantial evidence that an interface patent with a timer used on a phone is not, is reasonably pertinent to this? Because they didn't present substantial evidence. The only evidence that Apple relied on and the board relied on is Dr. Howe stating that the Desco is analogous art because it's reasonably pertinent to the problem, which is visual display techniques. But there's no explanation for how you get there. How do you get from the problem set forth by the patent owner to this statement that's not really a problem at all? And they have to explain it. If the board doesn't explain it, then that is an error. And they only cited to Dr. Howe. Additionally. Can I ask, would there be something wrong, there may well be, so with saying the following, Dr. Howe stated a somewhat too general statement of the problem because it didn't even make reference to timing at all. And the board said, that's a little too broad, actually. The problem, it's important to say, the general problem is as broad as you say, but there's an aspect of this when we look at the spec that includes a concern with the user knowing something about timing. Is there anything wrong with the board exercising its judgment when it gets some evidence that it thinks is too broad and adjusting it by saying, with enough support, and giving you notice to respond? Two points on that, Your Honor. First, the board didn't do that. If it had talked about how it merged its statement of the problem with Apple's statement of the problem, that would be something we could analyze. But the board didn't do that. The board just adopted its own statement and didn't explain how it got from Apple's to its statement. And, Your Honor, that's like the Corfonix case where I believe the statement was a little different and the court held, we can't tell what the board was relying on and it remanded. But in this case, we're in a different situation because, yes, you could remand, but I think you have to remand to require the board to address both problem statements, our problem statement that it ignored, and this statement. And when you look at Apple's statement, the support that's provided for Apple's statement is purely circular. So there's no reason really to remand. You can reverse because there's no argument that under our statement of the problem, it's non-analogous art. Let me reserve my time if there are no questions. Mr. Davis. Good morning, Your Honors. May it please the court. Substantial evidence supports the board's findings that Tedesco is reasonably pertinent to the problem of displaying time for certain payment-related activities with which the alleged inventor of the 692 patent was involved. What is the reasonable evidence that Tedesco is, or what is the substantial evidence that Tedesco is, as you just said, reasonably pertinent to the timer's problem? Yes, Your Honor. As some of the questions illustrated earlier, these were about mobile phone interfaces. No, you just said reasonably pertinent to the timer problem. So I want to know where the substantial evidence is that it is reasonably pertinent to the timer problem. Yes, Your Honor. The board at Appendix 37 to 38 cites to Dr. Hu's testimony and his citations to Tedesco. Where's the testimony? That's the evidence, right? The board's opinion is not evidence. So where is the evidence, the substantial evidence? That's correct, Your Honor. Appendix 4580 to 4581, this is Column 2, Lines 3 to 5 of Tedesco. And there it's discussing a mobile terminal using, this is a quote, using appropriate graphical elements, end quote, and it provides an example, graphical countdown timers. I certainly agree that Tedesco is related to countdown timers. What I'm looking for is where the board was presented with the idea that that is the problem. That's what I'm looking for. On the inventor's side. For this inventor. This inventor. I apologize, Your Honor. Was approaching that problem. I misunderstood the question. I apologize. That's okay. Going back to the 692 patent. So the 692 patent does start out in Column 1. As Judge Ferranto referenced earlier, this is Appendix 88, Lines 47 to 57, and it's talking about Column 1, Lines 47 to 57. And there it's talking about resetting the setting of a temporary payment card when a payable time passes, and doing so into Hold on, I might be, maybe I'm in the wrong place here. Where are you? Column 1 of the patent. We're talking the 692 patent, right? That's correct, Your Honor. Column 1, what page? That's Appendix 88. No, okay, but Column 1, line.  And 47 just says technical problem. So are you in the technical problem? Is that where you are? That's correct, Your Honor. Okay, go ahead. 47 to 57, and it's at line 53. So it talks about resetting the setting of a temporary payment card when a payable time passes, and doing so into Hold on, I might be, maybe I'm in the wrong place here.      And then it goes on to discuss. Okay, sure, but that doesn't, that nothing in there has anything to do with a visual display for a user to be aware. This is the action of the resetting, the switcheroo that's going to take place, but not the presentation of information. Correct, Your Honor. I just, I'm trying to point to three different places. But no, but I just want to make sure that we agree with each of these things. So that doesn't say anything about visual display. That's about, and all those little fun little adverbs that they throw in there, easily, swiftly, naturally, amusingly, intuitively, none of those have anything to do with visual display. They have to do with the need to make the switch in the payment system less cumbersome and more easy, correct? I would respectfully disagree in the sense that they have to do with visual display. That information has to be communicated in some way. Otherwise, there's no way to interact or have the user be able to use this mobile device without visually displaying the information somehow. That, the board then goes on. Wait, no, no, I don't see that in the technical problem. I don't see what you just said, and I want you to show me where that is. This says, one or more exemplary embodiments provide a method for setting a temporary payment card. So setting a temporary card, okay, which sets as a temporary card a mobile payment card which is moved by the user from among mobile payments in a list. So what you have to have on display is the ability to move it. You've got to see it on a list, you've got to be able to move it, right? That's what you have to have. And then it says, and resets the setting of the temporary payment card when the payable time passes. Now, that has nothing to do with the user. That's the system. Resets it when the payable time passes. Why do you need a timer for that? Why is the timer relevant for that? Surely there is a timer, but why is there a visual display of the timer at all relevant to the solution of that problem? Because that passage goes on to then describe so that a user can change the temporary payment card more easily, swiftly, naturally, amusingly, intuitively. Yeah, but the changing has nothing to do with the timer. The timer is what puts it back to the default. So you have a default card in your wallet, your mobile wallet. And you have the ability to slide another card over temporarily in place of the default card. And then when the time runs out, the default card pops back in. And so what does anything about that problem, as described with all those fun little adverbs, have anything to do with there being a clock that communicates to the user when the process will take place? This is about the switcheroo process, not about the user knowing the timing of the switcheroo process. Your Honor, the user doesn't know or wouldn't know what card is active without being given some sort of indication. Sure they would. It's the one on the screen. Oh my goodness, you look at all the pictures. The one that's active is the one right in the middle of the screen, right? Like bingo, here's your card. Right, and the whole point of this, Your Honor, though, is such that the user can then use that card. Because they see it right there on the screen. Right, but to know how quickly they would need to tap the card or if they need to reset the timer or what have you. But the board's evidence... How quickly? When it's not on the screen anymore and a different card is on the screen. Then you know it's not on the screen. You don't need a timer for that, do you? Well, Your Honor... If I need a timer for that, I mean, I can see one card on the screen and then I see a different card on the screen. Your Honor, if there's only one second, for example, that wouldn't be enough time to tap the card or whatever we do. But the board's analysis doesn't... So the problem here is avoiding inadvertent tapping of wrong cards? I don't see that problem in this. Your Honor, the board's analysis isn't limited to the technical problem section, nor should it be. And it does cite two in column two as well as column five. The reason it shouldn't be limited to the technical problem section is because it's improper for an inventor to be able to say, okay, my technical problem is this very narrow passage or this very narrow topic to exclude large swaths of evidence. That's why this court and the board, when it reviews this question, doesn't limit itself to one particular passage of the patent, but instead it looks to the patent as a whole to see what were the problems being addressed. One of those problems here, and this is also made... So here's the concern I have. There are lots of patents that say, here's the problem the inventor is challenged with and facing. And then over in the advantages section usually, they'll say, oh, mine might also have the advantage of being cheaper. Now, the problem the inventor was not trying to solve is how to be cheaper. But the patentee might just articulate a lot of advantages. Another advantage of mine, I'm going to make it red, and that way people will see it more often. That doesn't mean this inventor started with the base problem of wanting people to see it more often. Isn't it possible that a lot of advantages could flow from an invention that are not the problem that motivated this inventor to make this solution? So here, Your Honor, I'm not talking about an... It's a yes or no question. Isn't it possible there are a lot of advantages listed in a patent, not every one of which has to be treated as the problem the inventor was trying to solve? That's correct, Your Honor. I would agree with that. Here, we're not speaking about an advantage. We're talking about an additional problem that the inventor was trying to solve. For example, as the board points to it, column two, lines four to five, a method may further include... If you say an additional problem the inventor was trying to solve, I'm now going to be very circular on you. And the reason I'm going to be very circular is because your argument, your expert testimony, is timers are well-known in the art. And I've got to be honest with you, I think timers were well-known in the art at that time. But that's a totally different and discreet question from whether Tedesco's analogous are. But I think timers were awfully well-known. So why would this inventor be trying to solve the problem of visual timers on interfaces? The problem would be how to display that time, how to display the timer. I agree with you. Timers are well-known. That concept is well-known. The problem, though, is how to convey this particular... How to display the time for these certain payment-related activities. And that's what the board points to at column two, lines four to five, when it says there... It says the method may further include displaying a remaining payable time. And it doesn't... Does that... Okay. That language is as squish as it comes. It might do this. How is that... If something is really the problem the inventor is trying to solve, you don't usually frame it in terms of... And you might also throw this in. You might do this as well. The board's analysis doesn't stop there. There, Your Honor. It continues on to column five as well through the testimony of Dr. Who, lines 42... Let me tell you. Look, the problem for me is it's not that I want to collapse the reasonably pertinent problem into the field of endeavor. But I do think they're integrated problems. They're integrated... The two factors are integrated. It has to be that a reasonably... An ordinarily skilled artisan, that person who... I'll say POSA because Judge Lori's not here. He doesn't like POSA. But it has to be that that person would choose to look to this. And I'm just finding it impossible to believe that a person working in the field of mobile banking and mobile payments and mobile wallets would go to a tool for autistic children so that their parents can tell them when to brush their teeth. That is just so far afield. I'll be honest with you. If you had just said or your expert had just said that these things are well-known in the art, full stop, I'd have been like, done. Check the box. But you didn't. You relied on this patent for this proposition that to me just seems like something a skilled artisan would never have looked to. It reminds me of a case we had. We had Apple Samsung. And in this case, it was about the slide-to-unlock feature. And the slide-to-unlock feature was known to have been created to prevent butt dialing. And one of the pieces of prior art was a thermostat on the wall. Well, that's very unusual. Nobody's butt goes onto a thermostat. So I don't know how a slide-to-unlock on a thermostat patent is going to solve the butt dialing problem. That's kind of what this feels like. It feels like this tool for developmentally disabled children does not have any relevance to me and my little brain to mobile wallets and financial payments on the mobile system. I mean, that's the problem. That's where my heart is on this one. I'm just like, I don't, I'm really struggling. And, Jan, I appreciate the question. And I think it goes back to that point of this is interface art. This is a 692 patent talking about a mobile phone. How do we display time to communicate that to a user? We have Tedesco, which, again, is talking about mobile phones. How do we display time to communicate that to a user? And to judge Trana, your question earlier about what's well-known in the art, and should judge more to your point as well, the board relies on that to help show why Tedesco would have logically commended itself to the attention of the inventor, because it is well-known to use timers in this field. And this is an example of using a timer on a mobile phone, which provides substantial evidence to support the board's findings here. I mean, if you win for me, it's going to be that substantial evidence standard that's going to be your winning saving grace, because I just don't, I can't fathom a skilled artisan in the mobile payment method looking to a device whose purpose is to literally get autistic children to know when to brush their teeth. I mean, like, that is just so far afield that I just can't imagine somebody really taxed with financial security and internet transactions thinking it would go to a tool for scheduling the day of a disabled child. It's just, you see my problem. And your Honor, I think that's why we are not, when we are looking at step two of the analogous inquiry, we are not bound to a particular field of endeavor. We look at instead what logically would have commended itself to the inventor's attention, and it is a substantial... And your position basically comes down to, this is interface art. And software designers, when they're looking at ways to implement certain things in interfaces, are not going to combine themselves to one field of endeavor. They're going to look at how interfaces are used in other fields of endeavor. And if we agree with that, then you win. I guess if we don't, if we find there's no substantial evidence for that, you don't win. That's correct, your Honor. If there wouldn't be substantial evidence for that, it would be a revamp back to the Board to explain it further, and there are other issues remaining as well before the Board on that, but we would ask this Court to affirm. Thank you. Thank you, Counsel. Thank you, your Honors. I want to quickly address the question that Judge Toronto had on paragraph 123 of the Howe Declaration. Yeah. That paragraph is directed to motivation to combine.  And in order to get to motivation to combine, you've already decided that the reference is analogous. And so that does not support the substantial evidence that the Tedesco reference is analogous. But the Board did cite that in the analogous art discussion at page 38. Yes, it did. But it doesn't support a determination that Tedesco is analogous because it deals with motivation to combine, which comes later. I don't understand. You think a statement made in one place, which is a statement of fact about something, can't be utilized by the Board for another aspect of the analysis? I would say sometimes it can and sometimes it can't. But here, Dr. Howe said specifically a posito would have been motivated to use Tedesco countdown with hurdle and chitty and as modified by Spodak. And that's assuming Tedesco is already in the mix. And we haven't gotten to that point yet. Additionally, it's improper to say that the problem – well, I understand the issue that the Court has that the problem can't be the field of endeavor. I understand that. But it also can't be the problem the inventor was trying to solve as one limitation in a claim out of eight limitations that all go together to solve the inventor's problem. And indeed, it has to be the problem the inventor was seeking to solve, not this one little element, because it's an obviousness determination. Finally, my last point is that Apple had the burden, not Mozilla, and Apple didn't satisfy that burden. In fact, Apple didn't put forth any evidence in its petition about analogous art. It had one boilerplate statement at 128. It wasn't until the decision to institute that the board recognized that patent owner Mozito had put analogous art at issue. And then Apple addressed that issue for the first time in its reply, and that's where it came up with its statement of the problem, visual display techniques for integrating with a user. The fact that that may be different from the board's problem, that's Apple, because it has the burden of proof. Thank you, Your Honors. I appreciate it. This case should be reversed. We thank both counsel. The case is taken under submission.